UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: | § |
| | §    CASE NO. 08-36084-H4-11 |
| MPF HOLDINGS US LLC, et al, | § |
| | §    Chapter 11 |
| Debtors. | §    (Jointly Administered) |

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
RESPONSE AND OBJECTION TO DEBTORS'
PROPOSED DISCLOSURE STATEMENT
[DOC. 357]

The Official Committee of Unsecured Creditors (the "Committee") responds and objects to the Debtors' proposed disclosure statement [doc. 357] and the emergency motion to approve same [doc. 358] as follows:

**SUMMARY**

The proposed Disclosure Statement is inadequate. The proposed Joint Plan of Reorganization appears to create a Litigation Trust to pursue avoidance actions and other causes of action on behalf of holders of unsecured claims. This is the only potential source of recovery for holders of unsecured claims under the proposed Joint Plan of Reorganization.

The Plan proponents would burden the Litigation Trust and Litigation Trustee with administrative duties that have nothing to do with pursuing causes of action to benefit holders of general unsecured claims. The Litigation Trust is insufficiently funded, thereby preventing any meaningful pursuit of avoidance actions and other causes of action on behalf of general unsecured creditors. Other aspects are not adequately disclosed either.

**BACKGROUND**

The Plan contemplates the sale of substantially all of the Debtors assets to Cosco (Dalian) Shipyard Co. Ltd. ("Cosco") for the purchase price of $104,000,000.00, Cosco's assumption of liabilities in accordance with novation agreements that have and may be entered into between the Debtors and various trade creditors, and the release of MPF-01 from its obligation to pay any Cure Amount under the contract with Cosco. *See* Section 5.01 of the Disclosure Statement; *see also* Section 4.01 of the proposed Joint Plan of Reorganization (the "Plan") [doc. 356]. In addition, Cosco may make an additional cash payment to DvB to bring the cash portion of the purchase price up to $105,000,000.00. *See* Section 5.01 of the Disclosure Statement; *see also* Section 4.01 of the Plan. These cash proceeds will be paid by the Purchaser directly to DvB. *See* Section 5.01 of the Disclosure Statement; *see also* Section 4.01 of the Plan.

The Plan separates DvB's claims against the Debtors into three categories: (1) DIP Loan Claims; (2) DvB Secured Claims; and (3) DvB's General Unsecured Claims. *See* Sections 2.04, 3.03 and 4.03 of the Disclosure Statement; *see also* Sections 2.03 and 3.03 of the Plan. The proceeds from the sale of the assets to Cosco will be used first to satisfy the DIP Loan Claims and then to satisfy DvB's Secured Claims. *See* Section 4.03 of the Disclosure Statement; *see also* Section 3.03 of the Plan. The DIP Loan Claims are estimated to be $19,882,679.00 and the DvB Secured Claims are estimated to be $85,338,009.00 for a total of $105,220,688.00. *See* Sections 3.03 and 4.03 of the Disclosure Statement; *see also* Section 3.03 of the Plan. This is the amount due, as calculated by DvB for every charge it could make under the loan facilities on advances of approximately $78,500,000, for a return of over 26%. In addition to receiving all of the proceeds from the sale of the Debtors' assets to Cosco, which could be $105,000,000 on a claim of $105,220,688, as projected by DvB, it is proposed that DvB be paid "any funds

remaining in (a) the Liquidation Account after payment of all Allowed Administrative Claims (including any Wind-down Costs), Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims and (b) the Wind-down Account after payment of all Wind-down Costs…" *See* Section 4.03 of the Disclosure Statement and Section 3.03 of the Plan.

The remaining claims by DvB will be considered a General Unsecured Claim and is estimated by DvB to be $151,271,946.00. *See* Sections 2.04 and 4.03 of the Disclosure Statement; *see also* Section 3.03 of the Plan.

The Plan also classifies the 2006 Bond Debt and 2008 Unsecured Convertible Bond Debt as General Unsecured Claims. *See* Sections 2.04 and 4.03 of the Disclosure Statement; *see also* Section 3.03 of the Plan.

Finally, the Debtors estimate that they have outstanding accounts payable due to vendors and suppliers of approximately $82 million as of the Petition Date. *See* Section 2.04 of the Disclosure Statement. To the extent that the remaining vendors and suppliers' claims are secured by liens on equipment, the vendor or supplier shall receive distribution of the property securing such claim in full satisfaction of the lien claim; provided, however, that if the vendor or supplier is a party to a Novation Agreement or possesses collateral that is part of the assets to be transferred to Cosco, such vendor or supplier shall receive treatment as set forth in, and under the terms of, the Assignment and Purchase Agreement between the Debtors and Cosco and/or the relevant Novation Agreement. *See* Section 4.03 of the Disclosure Statement; *see also* Section 3.03 of the Plan. To the extent that these claims are not secured, they are classified as General Unsecured Claims. *See* Section 4.03 of the Disclosure Statement; *see also* Section 3.03 of the Plan.

The Plan creates a Litigation Trust for the purpose of pursuing Causes of Action (as that

term is defined in Section 1.02 of the Plan) on behalf of holders of Allowed General Unsecured Claims. *See* Section 4.03 of the Plan. Each holder of an Allowed General Unsecured Claim is entitled to a pro rata share of any amounts constituting proceeds from the resolution of Causes of Action. *See* Section 4.03 of the Disclosure Statement; *see also* Section 3.03 of the Plan. Otherwise, the only recovery that General Unsecured Creditors will realize under the Plan is from the successful prosecution of Causes of Action by the Litigation Trustee.

The Litigation Trust will be funded with $50,000.00 from the Liquidation Account. *See* Section 5.03 of the Disclosure Statement; *see also* Section 4.03 of the Plan. Unfortunately, the proposed funding of the Litigation Trust is inadequate to complete the duties that the Plan requires the Litigation Trustee to perform. The Litigation Trustee is tasked with the following duties among others:

- Reviewing and analyzing all Causes of Action. *See* Section 5.03 of the Disclosure Statement; *see also* Section 4.03 of the Plan.

- Bringing and prosecuting all appropriate lawsuits to try to collect money for the benefit of unsecured creditors. *See* Section 5.03 of the Disclosure Statement; *see also* Section 4.03 of the Plan.

- Analyze all unsecured claims. *See* Section 8.01(a) of the Disclosure Statement; *see also* Section 7.01(a) of the Plan.

- File claims objections and handle all claims objection litigation. This must be done no later than the Claims Objection Deadline. *See* Section 8.01(a) of the Disclosure Statement; *see also* Section 7.01(a) of the Plan.

- Determine all objections to rejection of executor contract claims. *See* Sections 7.03 and 8.01(a) of the Disclosure Statement; *see also* Section 6.03 of the Plan.

- Handle those objections.

- Receive, administer, hold and distribute, in accordance with the Plan, (i) the Litigation Trust Amount, and (ii) all proceeds of the Avoidance Actions in accordance with the terms and provisions of the Plan. *See* Section 5.03 of the Disclosure Statement; *see also* Section 4.03 of the Plan.

- File federal income tax returns for the Plan Trust pursuant to the applicable provisions of the Internal Revenue Code. *See* Section 6.03 of the Disclosure Statement; *see also* Section 5.03 of the Plan.

- For every distribution made from the Litigation Trust, the Litigation Trustee must fill out and file a Form 1099 or an informational tax return on Form 1042, as required by the Internal Revenue Code both with the Internal Revenue Service and each of the recipients of such distribution. *See* Section 6.03 of the Disclosure Statement; *see also* Section 5.03 of the Plan.

- Withhold all amounts from distributions required by the Internal Revenue Code. *See* Section 6.03 of the Disclosure Statement; *see also* Section 5.03 of the Plan.

- Determine and litigate setoff claims. *See* Section 6.05 of the Disclosure Statement; *see also* Section 5.05 of the Plan.

- Determine and hold reserve amounts for each Disputed Claim. *See* Section 8.03(b) of the Disclosure Statement; *see also* Section 7.03(b) of the Plan.

- Determine the amount paid by the Debtors prior to the Effective Date, whether reflected in the schedules or not, to Holders of Claims and offset those amounts before distribution. *See* Section 8.04 of the Disclosure Statement; *see also* Section 7.04 of the Plan.

- The Litigation Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. *See* Section 8.05 of the Disclosure Statement; *see also* Section 7.05 of the Plan.

- Obtain W-9 Forms and other appropriate documents and pay all withheld taxes. *See* Section 6.03 of the Disclosure Statement; *see also* Section 5.03 of the Plan.

- Hire a Litigation Trustee.

- Hire accountants, lawyers, and potentially other professionals and supervise them.

All of these duties are to be performed in a fiduciary capacity, which could justify the procurement of insurance.

In comparison to the proposal to fund the Litigation Trust with the sum of $50,000.00 for all of the foregoing duties, the Plan imposes on the Provisional Liquidators the sole duty of winding up, through appropriate Bermuda proceedings, the corporate existence of the Debtors.

For this they are given $300,000.00. *See* Section 3.03 of the Plan; *see also* Sections 3.01 and 7.01 of the Disclosure Statement. The Plan imposes on Liquidating MPF the duty to handle payment of and any objection to tax claims and secured claims. According to the Debtors' schedules, there appears to be only one or two tax claims and they will simply be paid. Likewise, the DvB secured DIP and first priority claims are being paid without objection and all remaining secured claims are not being paid and are being moved to the General Unsecured Claims category. For these services, Liquidating MPF is given access to the remaining balance on the DIP loan, which was reportedly $2,000,000.00 in April but may be as low as $1,250,000.00 as of now.

The Liquidation Account is the second source of funding for implementing the Plan. According to Section 5.02 of the Disclosure Statement and Section 4.02 of the Plan, any "funds remaining in the Liquidation Account as of the Effective Date shall be deemed to be property of the estate and shall be used to pay (1) the Litigation Trust Amount [($50,000.00)], and (ii) Allowed Administrative Claims (including any Wind-down Costs), Allowed Priority Tax Claims, and Allowed Priority Non-tax Claims." Then, if any funds are remaining, the excess funds shall be transferred to DvB. *See* Section 5.02 of the Disclosure Statement. However, in Section 4.03 of the Disclosure Statement, DvB is entitled to any excess funds from the Liquidating Account after payment of (a) all Allowed Administrative Claims (including Wind-down Costs), Allowed Priority Tax Claims, Allowed and Priority Non-Tax Claims and (b) the Wind-down Account after payment of all Wind-down Costs. Section 4.03 fails to state that the Litigation Trust will be funded with funds from the Liquidation Account before DvB is entitled to such funds.

## APPLICABLE LAW

Under 11 U.S.C. § 1125(b), a party seeking chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure statement containing adequate information. 11 U.S.C. § 1125(a)(1).

Bankruptcy law requires one seeking benefits under its terms to satisfy the companion duty of full disclosure. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 321 – 322 (3d Cir. 2003). Preparing and filing a disclosure statement is a critical step in the reorganization of a Chapter 11 debtor. *Id.* It has been called the "pivotal concept in reorganization of a Chapter 11 debtor." *Id.* The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. *Id*. As stated by the Third Circuit, "we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of adequate information." *Id*. "[C]reditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, [therefore] the importance of full and honest disclosure cannot be overstated." *Id*. at 323.

Adequate information is defined as "information of a kind, and in sufficient detail [to] enable…a hypothetical investor of the relevant class to make an informed judgment about the plan…[and] consider…the benefit of additional information to creditors and other parties in interest." 11 U.S.C. § 1125(a)(1); *Mabey v. Southwestern Electric Power Co. (In re Cajun Electric Power Cooperative, Inc.)*, 150 F.3d 503, 518 (5th Cir. 1988); *Krystal Cadillac*, 337 F.3d at 321 – 322. "The determination of what is adequate information is subjective and made on a case-by-case basis." *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988). "This determination is largely within the discretion of the bankruptcy court." *Texas Extrusion*, 844

F.2d at 1157 (*citing In re Brandon Mill Farms, Ltd.*, 37 B.R. 190 (Bankr. N.D. Ga. 1984); *In re Stanley Hotel, Inc.*, 13 B.R. 926 (Bankr. D. Co. 1981)).

## OBJECTIONS

**A. The Disclosure Statement Fails To Adequately Address Feasibility and Funding of the Litigation Trust.**

The Disclosure Statement fails to provide adequate information regarding (1) the funding of the Litigation Trust, (2) the purposes of burdening the Litigation Trustee with a substantial amount of duties and obligations, (3) the substantial funding provided to the Joint Provisional Liquidators and Liquidating MPF to perform few tasks, and (4) the feasibility of the Plan with respect to the insufficient funding of the Litigation Trust.

Litigation trusts, such as the one contemplated by the Plan, require significant funding as seed money to ensure that the trust has sufficient cash to meaningfully pursue causes of action and to provide a real benefit to unsecured creditors who would otherwise receive nothing under a liquidating plan of reorganization. *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, n.3 (3d Cir. 2010) (Proposed Plan, which provided for the sale of substantially all of the Debtors' assets at auction, established a liquidating trust fund in favor of general unsecured trade creditors in the amount of **$750,000 to $1.2 million**); *Falcon Creditor Trust v. Falcon Products, Inc. (In re Falcon Products, Inc.)*, 2008 U.S. Dist. LEXIS 34189, 6 -7 (E.D. Mo. 2008) (Proposed plan made no payments to unsecured creditors but provided that those creditors would receive net proceeds of certain litigation through the creation of a trust to pursue litigation on behalf of the unsecured creditors. The trust was loaned **$200,000** by the Reorganized Debtor for the sole purposes of prosecuting the avoiding power causes of action.); *In re Idearc, Inc.*, 423 B.R. 138, 176 (Bankr. N.D. Tex. 2009) (Modified Plan increased the Litigation trust funding from

**$250,000 to $2.5 million**); *Moglia v. Keith (In re Manchester, Inc.)*, 2009 Bankr. LEXIS 2003, 16 – 19 (Bankr. N.D. Tex. 2009) (Confirmed plan of reorganization provided the Litigation Trust **$3.7 million** to ensure that the trust had sufficient cash to meaningfully pursue the Causes of Action.); *In re Heritage Organization, L.L.C.*, 375 B.R. 230, 311 - 12 (Bankr. N.D. Tex. 2007) (Bankruptcy Court overruled a feasibility objection to the proposed plan of reorganization whereby approximately **$1.7 million** was left as 'seed money' to fund the Kornman Adversary Proceeding and whatever other litigation the trust chose to pursue.); *In re Resorts International, Inc.*, 199 B.R. 113, 115 (Bankr. D. N.J. 1996) ("Pursuant to the Plan and Litigation Trust Agreement, Resorts was required to make available **$5,000,000** to the Litigation Trust to be used to prosecute or otherwise liquidate the Litigation Claims which the Debtors assigned to the Litigation Trust and to fund other Litigation Trust expenses.").

The Disclosure Statement fails to provide adequate information that would enable a holder of a General Unsecured Claim to make an informed judgment about whether the funding of the Litigation Trust with $50,000.00 is sufficient to offer a reasonable prospect of success. First, the Disclosure Statement fails to adequately inform creditors why the Joint Provisional Liquidators and Liquidating MPF are entitled to a significantly larger funding than the Liquidating Trust to perform substantially fewer duties. Second, the Disclosure Statement fails to adequately inform creditors why $50,000.00 is sufficient to fund the Litigation Trust.

The Disclosure Statement represents that the creation of the Litigation Trust is "for the purpose of pursuing the Causes of Action for the benefit of holders of Allowed Class 4 Claims" and "will not engage in the conduct of a trade or business." *See* Section 5.03 of the Disclosure Statement. Despite these representations, the Plan and Disclosure Statement would confer duties and responsibilities upon the Litigation Trustee that extend well beyond its purpose of pursuing

Causes of Action. The Disclosure Statement fails to provide any information as to why the Litigation Trustee must be burdened with substantial administrative duties and responsibilities that provide no benefit to the holders of General Unsecured Claimants. The Disclosure Statement should explain why the Joint Provisional Liquidators and/or Liquidating MPF, who will have access to substantially more funds and exist for administrative purposes, do not handle claims objections, tax returns, and other matters.

Finally, there is no discussion of how the inadequately funded Litigation Trust renders the plan feasible. A proposed plan of reorganization that does not fund a liquidating trust sufficiently does not offer a reasonable prospect of success and may not be feasible. *See In re Zaruba*, 2008 Bankr. LEXIS 2461, 8 – 10 (Bankr. D. Alaska 2008) (Proposed plan rejected partly on grounds that the liquidating trust arrangement does not offer a reasonable prospect of success because assets proposed to fund the trust are inadequate and do not contribute enough equity to the liquidating trust.). The Debtors fail to provide a feasibility analysis with the Disclosure Statement.

**B.  Is the Liquidation Account to be Used to Fund the Litigation Trust?**

The Disclosure Statement states that the Liquidation Account will fund the Litigation Trust with $50,000.00. *See* Section 5.02 of the Disclosure Statement. However, Section 4.03 of the Disclosure Statement provides that DvB is entitled to any excess funds from the Liquidation Account after payment of all Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims. In Section 4.03, there is no mention of the Litigation Trust and Section 4.03 suggests that DvB is entitled to the excess funds from the Liquidating Account before the Litigation Trust can receive $50,000.00. Both the Plan and the Disclosure Statement

need to be modified so that it is clear whether the Litigation Trust is entitled to funds from the Liquidation Account before the funds in the Liquidation Account are paid to DvB.

C. **How Do the Joint Provisional Liquidators' Right to Bring any Claim or Cause of Action Belonging to Such Joint Provisional Liquidators Arising Under Bermuda Law as a Result of the Commencement of the Bermuda Proceedings Affect the Litigation Trust and Litigation Trustee's Rights Under the Plan?**

Both the Plan and Disclosure Statement appear to grant the Litigation Trust and Litigation Trustee the exclusive right to bring all Causes of Action. *See* Section 5.03 of the Disclosure Statement and Section 4.03 of the Plan. However, in Section 4.03 of the Plan and Section 5.03 of the Disclosure Statement, the Litigation Trust and Litigation Trustee's rights are limited. These sections state, "nothing herein shall restrict the right of the Joint Provisional Liquidators or any liquidator subsequently appointed in the Bermuda Proceedings from bringing any claim or cause of action belonging to such Joint Provisional Liquidator or liquidator, as the case may be, arising under Bermuda law as a result of the commencement of the Bermuda Proceedings."

Despite this language in the Plan, the Disclosure Statement fails to provide any analysis as to what these claims or causes of action may be, how they might affect the Litigation Trustee's right to pursue Causes of Action, how they might limit the Litigation Trustee's recoveries from Causes of Action, how the Joint Provisional Liquidators will be funded to pursue such claims or causes of action, and who would receive any proceeds from the claims or causes of action brought by the Joint Provisional Liquidators.

The Disclosure Statement should be modified to provide creditors with adequate information regarding the Joint Provisional Liquidators' rights under the Bermuda Proceedings, how such rights will limit the Litigation Trustee's right to pursue Causes of Action, how such

rights will limit the Litigation Trustee's recoveries, and who will receive the proceeds from the Joint Provisional Liquidators successful prosecution of any such claims and causes of action.

### D. The Plan and Disclosure Statement Provide for Disparate Treatment of DvB's Unsecured Claim

The Plan and Disclosure Statement state that DvB will receive in full and complete settlement and release of and in exchange for its DvB Secured Claim, the cash proceeds from the sale of assets to Cosco. *See* Section 4.03 of the Disclosure Statement; *see also* Section 3.03 of the Plan. In fact, "[t]o the extent that the amounts received as provided in the Plan are less than the amount of the DvB Secured Claim, DvB shall waive the deficiency and shall not become a Holder of a Class 4 General Unsecured Claim against the Debtors with respect to such deficiency." *See* Section 4.03 of the Disclosure Statement; *see also* Section 3.03 of the Plan. DvB's remaining Claims are classified as General Unsecured Claims. Therefore, DvB will receive its pro rata share of distributions from the Litigation Trust in satisfaction of its General Unsecured Claims.

Despite only being allowed a general unsecured claim and the Plan providing for DvB's release of any deficiency to its DvB Secured Claims, the Plan and Disclosure Statement permit DvB to recover additional funds without such funds going through the Litigation Trust or being subject to the Class 4 Pro Rata Distribution. DvB is entitled to recover the entirety of: (a) any funds remaining in the Liquidation Account; (b) any additional Cash Proceeds that may be payable after the Closing Date; (c) any funds remaining from the $300,000.00 to fund Wind-down costs; (d) any remaining portion of the Litigation Trust; and (e) any abandoned assets that DvB, in its sole discretion, decides to receive. The remaining unsecured creditors do not receive any distribution from these assets of the debtors.

The Disclosure Statement fails to provide adequate information to inform creditors, especially holders of a General Unsecured Claim, why DvB, when it has waived its right to a deficiency, if any, of its Secured Claim, is entitled to receive the entirety of such funds and assets and such funds and assets are not subject to the Pro Rata distribution set forth in Section 4.03 of the Disclosure Statement and Section 3.03 of the Plan.

**E. The Disclosure Statement Fails to Provide Adequate Information as to Why the Release of Cosco from all Causes of Action (Including Avoidance Actions) is Integral to the Plan**

Section 13.05(a) of the Disclosure Statement and Section 12.05(a) of the Plan provide Cosco with a broad release and injunction from and any and all Claims and Causes of Action. The only explanation given for releasing Cosco is the conclusory statement, "[e]ach of the releases and injunctions provided in this Section 12.05 is an integral part of the Plan and is essential to its implementation." *See* Section 13.05(e) of the Disclosure Statement; *see also* Section 12.05(e) of the Plan.

The United State Supreme Court has stated with regard to settlements contained within Plans of Reorganization:

> The fact that courts do not ordinarily scrutinize the merits of compromises involved in suits between individual litigants cannot affect the duty of a bankruptcy court to determine that a proposed compromise forming part of a reorganization plan is fair and equitable. [citation omitted]. There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-425 (U.S. 1968). In analyzing whether a release/permanent injunction in

favor of a non-debtor third party was appropriate in a plan the following non-exclusive factors should be considered:

- The third party has made an important contribution to the reorganization;
- The release is essential or important to the reorganization;
- A large majority of the impacted creditors has approved the plan containing the release;
- A close connection between the case against the third party and the case against the debtor exists; and
- The plan provides for payment of substantially all of the claims affected by the release.

*In re Seatco, Inc.*, 257 B.R. 469, 474 (Bankr. N.D. Tex. 2001) (*citing In re Master Mortgage Investment Fund*, 168 B.R. 930, 935 (Bankr. W.E. Mo. 1994)).

First, is Section 13.05(e) of the Disclosure Statement referencing Section 12.05 of the Plan? Section 12.05(e) does not exist within the disclosure statement. Second, no plausible explanation is given for providing a non-debtor such a broad release. If Cosco's release is integral to the Plan, then an explanation and analysis needs to be given explaining why one trade creditor is provided a complete and broad release.

The Disclosure Statement needs to give a detailed discussion of the implications of this settlement on the general unsecured claims, the Litigation Trust and any other affected persons. The Disclosure Statement also needs to provide an explanation and analysis explaining why the Plan is providing Cosco, a non-debtor, with a broad and complete release of any and all Claims and Causes of Action (including Avoidance Actions). For example, on the face of the Debtors' books and records, Cosco received $6,000,000 in payments during the preference period with an average of 224 days between the invoice date and the check date. Prior to the preference period,

Cosco received payments of $87,800,000 with an average of 15.25 days between invoice date and check date.

**F. Is the Debtors' Joint Plan of Reorganization in the Best Interest of the Creditors?**

On page 43 in Article XIX of the Disclosure Statement, the Debtors make the affirmative statement that they "believe that the Plan is in the best interests of all Holders of Claims and Interests…" The Debtors fail to provide an explanation as to why the sale of substantially all of the assets to Cosco is in the best interest of all the Holders of Claims instead of a sale of substantially all of the assets to the ultimate purchaser of the Debtors' assets.

Section 2.10 of the Disclosure Statement describes a subsequent transaction whereby Cosco will transfer all of the Assets purchased out of the bankruptcy proceedings to an unnamed third party. The relevant portions of the Disclosure Statement state:

> Through the efforts primarily of DvB, but with the assistance of the Debtors' management and project team, the Debtors have now achieved an agreement for the sale and purchase of the Acquired Assets with Cosco, MPF's largest vendor. The Debtors understand that Cosco intends to use the Acquired Assets in connection with the construction of a fully commissioned drillship under a turn-key engineering, procurement, and construction contract ("EPC Contract") between Cosco and a third party (the "Drillship Purchaser") who will take delivery of the drillship upon completion of construction. To perform its obligations under the EPC Contract, the Drillship Purchaser may seek debt financing from one or more financial institutions, including DvB.

The Disclosure Statement provides no explanation why a sale directly from the Bankruptcy Estate to the Drillship Purchaser would not provide a greater recovery for the Holders of Allowed Claims. Also not discussed is whether DvB is deriving some benefit from the subsequent transaction with the Drillship Purchaser? The only disclosure is the reference that the Drillship Purchaser may be getting its financing from DvB.

**G. The Disclosure Statement Fails to Provide Financial Information**

The Disclosure Statement fails to provide adequate information because it fails to provide financial information regarding what the General Unsecured Creditors may receive under the Plan and under a Chapter 7 liquidation. Although the Debtors make conclusory statements that General Unsecured Creditors will receive more under the Plan than under a liquidation conducted under Chapter 7, it is entirely unclear how the Debtors came to that conclusion.

Any recovery by the General Unsecured Creditors is entirely contingent upon the Litigation Trustee's success at prosecuting Causes of Action. However, "neither the Debtors nor other parties have identified or fully investigated any potential Avoidance Action." *See* Section 2.09(e) of the Disclosure Statement. By this statement, the Debtors admit that they have no knowledge of the potential recovery for General Unsecured Creditors under the Plan. Without such knowledge, it is unclear how the Debtors came to the conclusion that General Unsecured Creditors will receive more under the Plan than under a liquidation conducted under Chapter 7.

H. **No Liquidation Analysis**

In Section 15.01, the Disclosure Statement asserts, "[t]he Debtors believe that the value of any distributions in a chapter 7 case would be less than the value of distributions under the Plan."

Then again in Section 17.01, the Disclosure Statement states, "[t]he Debtors have determined that Confirmation of the Plan will provide each holder of an Allowed Claim or Interest with a recovery that is not less than such holder would receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code."

Despite these statements, the Debtors fail to provide any liquidation analysis and readily admit that they have performed no investigation as what General Unsecured Claimants may recover under the Plan. *See* Section 2.09(e) of the Disclosure Statement ("[N]either the Debtors

nor other parties have identified or fully investigated any potential Avoidance Action."). To provide adequate information, a disclosure statement should include an estimated return to creditors under a chapter 7 liquidation. *Westland Oil Development Corp. v. MCorp Management Solutions, Inc.*, 157 B.R. 100, 102 (S.D. Tex. 1993)(*citing In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984)).

## CONCLUSION

The Disclosure Statement fails to adequately deal with several matters. For example, the Disclosure Statement provides no liquidation analysis nor an estimation as to what holders of General Unsecured Claims might recover under the Plan. Without such information, a creditor cannot make an informed decision as to whether the Plan is in its best interest.

The Disclosure Statement leads creditors to believe a Litigation Trust is being created for their benefit. There is no discussion of how the Litigation Trust can successfully function with the burdens placed on it. The Plan burdens the Litigation Trustee with substantial administrative duties that have nothing to do with (a) pursuing the Causes of Action and (b) benefiting holders of general unsecured claims. The Plan also fails to supply the Litigation Trust with sufficient funding to allow it to be successful. Instead, the Plan ensures that DvB is the recipient of any and all of the Debtors' funds. The Disclosure Statement should contain a discussion of the risk that the Litigation Trust will be administratively insolvent and unable to function.

WHEREFORE, the Committee opposes the Debtors' request that the Court approve the Disclosure Statement and seeks such relief to which it is entitled.

          Respectfully submitted,

          By:   /s/ Ross Spence
          Ross Spence
          State Bar No. 18918400
          SNOW FOGEL SPENCE LLP
          2929 Allen Parkway, Suite 4100
          Houston, TX 77019
          (713) 335-4832 Direct
          (713) 335-4800 Telephone
          (713) 335-4848 Fax
          Email:  rossspence@snowfogel.com
          ATTORNEYS FOR THE
          OFFICIAL COMMITTEE OF
          UNSECURED CREDITORS

**OF COUNSEL:**

**SNOW FOGEL SPENCE LLP**
2929 Allen Parkway, Suite 4100
Houston, TX  77019
(713) 335-4800
(713) 335-4848 (Fax)

**CERTIFICATE OF SERVICE**

I certify that on May 11, 2010, a true and correct copy of the above and foregoing was served upon the following:

(1) D. Bobbitt Noel, Jr./Harry A. Perrin
VINSON & ELKINS L.L.P.
1001 Fannin, Suite 2300
Houston, TX 77002-6760

Courtney S. Lauer
VINSON & ELKINS L.L.P.
2002 Ross Avenue, Suite 3700
Dallas, TX 75201-2975

Matthew Scott Okin
OKIN ADAMS & KILMER LLP
1113 Vine Street, Suite 201
Houston, TX 77002

*Counsel for Debtor*

(2) Stephen Douglas Statham
OFFICE OF THE U.S. TRUSTEE
515 Rusk Street, Suite 3516
Houston, TX 77002

(3) All parties requesting notice via the Court's electronic case filing system (ECF).

(4) The parties listed on the Service List attached hereto as **Exhibit 1**.

/s/ Ross Spence
Ross Spence