**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Case No. 08-36084 |
| | § | |
| MPF HOLDINGS US LLC, *et al.*, | § | (Chapter 11) |
| | § | |
| Debtors | § | (Jointly Administered) |
| | § | |

## DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION

**(Dated May 12, 2010)**

**VINSON & ELKINS L.L.P.**

Harry A. Perrin, SBT #15796800
D. Bobbitt Noel, Jr., SBT #15056500
Courtney S. Lauer, SBT # 24043771
John C. Ivascu, SBT #24067680
Ginny A. Maslin, SBT #24055918
First City Tower
1001 Fannin, Suite 2500
Houston, TX 77002
Telephone: 713-758-2222
Facsimile:  713-758-2346

**Attorneys for the Debtors and Debtors in Possession**

## INTRODUCTION

MPF Holdings US LLC, a Texas limited liability company, MPF Corp. Ltd., a business entity incorporated under the laws of Bermuda, and MPF-01 Ltd., a business entity incorporated under the laws of Bermuda, debtors and debtors in possession (the "Debtors") in the above-captioned jointly administered Chapter 11 Cases pending in the United States Bankruptcy Court for the Southern District of Texas, Houston (the "Bankruptcy Court") hereby propose the following joint plan of reorganization for the resolution of outstanding creditor claims against, and equity interests in, the Debtors.  The Debtors are the proponents of the Plan within the meaning of Bankruptcy Code § 1129 (as hereinafter defined).

Reference is made to the Disclosure Statement (as hereinafter defined) for a discussion of the Debtors' history, businesses, properties, as well as a summary and description of the Plan and certain related matters.  No materials other than the Disclosure Statement, the Plan and any exhibits and schedules attached hereto or thereto or referenced herein or therein have been authorized by the Debtors (as hereinafter defined) for use in soliciting acceptances or rejections of the Plan.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY.  ALL HOLDERS OF CLAIMS OR INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THIS PLAN ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.   TO THE EXTENT THERE IS A DISCREPENCY BETWEEN THIS PLAN AND THE DISCLOSURE STATEMENT, THIS PLAN SHALL CONTROL.**

### ARTICLE I
### DEFINED TERMS, RULES OF INTERPRETATION,
### AND COMPUTATION OF TIME

**Section 1.01   Scope of Defined Terms; Rules of Construction**

For purposes of this Plan, except as expressly defined elsewhere in the Plan or unless the context otherwise requires, all capitalized terms used herein shall have the meanings ascribed to them in Article I of this Plan.  Any term used but not defined herein that is defined in the Bankruptcy Code or the Bankruptcy Rules, as the case may be, shall have the meaning ascribed in the Bankruptcy Code or the Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular.  The masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**Section 1.02   Defined Terms**

(1)     **"2006 Bond Debt Claims"** means any and all Claims arising under and relating to that certain Loan Agreement between MPF as Borrower and Norsk Tillitsmann ASA as Loan Trustee on behalf of the Bondholders in bond issue FRN MPF Corp Ltd Secured Bond Issue 2006/2011 with Call Option.

(2)      **"2008 Bond Debt Claims"** means any and all Claims arising under or related to that certain Loan Agreement between MPF as Borrower and Norsk Tillitsmann ASA as Loan Trustee on behalf of the Bondholders in the bond issue 10.0 per cent MPF Corp. Ltd. Unsecured Convertible Bond Issue 2008/2013.

(3)      **"Acquired Assets"** means such assets of the Debtors that will be transferred to the Purchaser pursuant to the Assignment and Purchase Agreement.

(4)      **"Administrative Claim(s)"** means a Claim(s) for costs and expenses of administration pursuant to Bankruptcy Code §§ 503(b), 507(a)(2), 507(b), or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services, and payments for goods and other services and leased premises); (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of Title 28 of the United States Code; (c) all Allowed Professional Fee Claims; and (d) all Claims for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to Bankruptcy Code §§ 503(b)(3), (4), and (5) Allowed by the Bankruptcy Court.

(5)      **"Administrative Claims Bar Date"** shall have the meaning set forth in Section 12.01 of this Plan.

(6)      **"Affiliate"** has the meaning set forth in Bankruptcy Code § 101(2).  For purposes of Article XII of the Plan and the definition of Related Person, an Affiliate of a Person shall also include another Person controlling, controlled by or under common control with such first Person.  For purposes of this definition, "control" means, when used with respect to any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract, or otherwise, and the terms "controlling" and "controlled" have correlative meanings.

(7)      **"Allowed"** means with reference to any Claim or Interest: any Claim or Interest or any portion thereof as to which (a) no objection to allowance or request for estimation has been interposed on or before the latter of (i) the Claims Objection Deadline or (ii) the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or is listed on the Schedules as liquidated, non-contingent and undisputed; (b) any objection to its allowance has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order; (c) liability of the Debtors and the amount thereof has been determined and expressly allowed by a Final Order; (d) the liability of the Debtors and the amount thereof are determined and expressly allowed by final order of a court of competent jurisdiction other than the Bankruptcy Court; or that is expressly deemed allowed in a liquidated amount in the Plan; provided, however, that with respect to an Administrative Claim, "**Allowed Administrative Claim**" means an Administrative Claim as to which a timely request for payment has been made in accordance with Section 12.01 of this Plan (if such written request is required) or other Administrative Claim, in each case as to which the Debtors, DvB or the Litigation Trustee (i) have not interposed a timely objection or (ii) have interposed a timely objection and such objection has been settled, waived through payment or withdrawn, as permitted herein, or denied by a Final Order.

(8)     "**Assignment and Purchase Agreement**" means the agreement for the purchase and sale of the Acquired Assets between MPF, MPF-01, the Joint Provisional Liquidators, and the Purchaser (including any exhibits or schedules attached thereto), as may be amended pursuant to the terms thereof.

(9)     "**Avoidance Actions**" means any and all actual or potential claims or Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including §§ 542, 543, 544, 545, 547, 548, 549, 550, 551, 553, and 724(a).

(10)     "**Ballot**" means the document for accepting or rejecting the Plan, in the form approved by the Bankruptcy Court.

(11)     "**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date as heretofore or hereafter amended.

(12)     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

(13)     "**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

(14)     "**Bar Date**" means the deadlines established by the Bankruptcy Court pursuant to the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines, at Docket No. 63, or other Final Order for filing proofs of claim in the Chapter 11 Cases, as the context may require.  Except as explicitly indicated in the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines, or other Final Order, the Bar Date was March 4, 2009.

(15)     "**Bermuda Debtors**" shall mean MPF and MPF-01 in provisional liquidation in Bermuda.

(16)     "**Business Day**" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

(17)     "**Cash**" means legal currency of the United States of America or equivalents thereof, including bank deposits and checks.

(18)     "**Cash Proceeds**" means the cash amount not more than $105,000,000 (or less than $104,000,000) to be paid to MPF and MPF-01 by the Purchaser pursuant to the Assignment and Purchase Agreement as part of the consideration for the purchase of the Acquired Assets.

(19)     "**Causes of Action**" means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments,

crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, in connection with or related to any of the Debtors, Liquidating MPF or their respective assets, property and Estates from the beginning of time through the Effective Date, including, but not limited to causes of action under state law or other applicable law for breach of contract, promissory estoppel, quantum meruit, unjust enrichment, constructive trust, injunctive relief, foreclosure, money had and received, breach of fiduciary duty, defalcation, embezzlement, tortuous interference with existing contract, tortuous interference with prospective business relations, conversion, breach of express warranty, breach of implied warranty, violation of intellectual property rights, fraud, statutory fraud, fraudulent transfer, torts, strict liability, deceptive trade practices, insurance code violations, negligent or intentional misrepresentation or omission, prompt payment violations, breach of good faith and fair dealing, malpractice, conspiracy, aiding and abetting, vicarious liability, respondeat superior, principal or agent liability, securities law violations, defamation, business disparagement, trespass, nuisance, negligence, negligence per se, turnover, wrongful lien filing, wrongful foreclosure, lender liability, usury, attorneys' fees, costs, interest, veil piercing, joint venture, Avoidance Actions, and any other claims or causes of action.

(20) "**Chapter 11 Case(s)**" means (a) when used in reference to a particular Debtor or group of Debtors, the chapter 11 case pending for that Debtor or particular group of Debtors in the Bankruptcy Court, and (b) when used in reference to all of the Debtors, the above-captioned procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

(21) "**Claim**" means a claim, whether or not asserted or Allowed, as defined in Bankruptcy Code § 101(5).

(22) "**Claims Objection Deadline**" means the first Business Day which is at least 90 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with Section 7.01(b) of the Plan.

(23) "**Class**" means a category of Claims or Interests as set forth in Article III below pursuant to Bankruptcy Code § 1122.

(24) "**Closing**" means the closing of the sale of the Acquired Assets to the Purchaser in accordance with the Confirmation Order and the Assignment and Purchase Agreement.

(25) "**Closing Date**" means the date on which the Closing shall occur.

(26) "**Collateral**" means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

(27) "**Committee**" means the official committee of unsecured creditors appointed pursuant to Bankruptcy Code § 1102(a) in the Chapter 11 Cases.

(28)     "**Confirmation**" means entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Cases.

(29)     "**Confirmation Date**" means the date on which the Confirmation Order is entered on the docket in the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

(30)     "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Bankruptcy Code § 1129, as such hearing may be continued from time to time.

(31)     "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code § 1129.

(32)     "**Consummation**" means the occurrence of the Effective Date, which shall take place simultaneously with the completion of the Closing.

(33)     "**Cosco Contract**" means that certain Contract for the Construction and Delivery of One MPF1000 Hull Unit dated September 19, 2006 (as amended, supplemented, or novated from time to time).

(34)     "**Cosco Settlement Agreement**" means that certain settlement agreement to be entered into by the Purchaser and MPF and MPF-01 in connection with the Assignment and Purchase Agreement pursuant to which, effective as of the Closing Date, (i) the Cosco Contract shall be terminated, (ii) MPF-01 and Purchaser shall release each other from any and all obligations and liabilities arising under, or relating to, the Cosco Contract, including, in the case of MPF-01, the obligation to pay the Cure Amount to Purchaser (as the vendor under the Cosco Contract), (iii) MPF-01 and Purchaser shall release each other from their respective obligations and liabilities under the Cosco Contract and waive any and all claims or causes of action against each other and their respective related parties in connection with the Cosco Contract, and (iv) MPF and MPF-01 and their affiliates shall release and permanently waive any and all claims that any of them had or may have against the issuers of any "residual guarantees" issued to or in favor of any of them at the request of Purchaser under, in connection with, or relating to the Cosco Contract.

(35)     "**Creditor**" means any Person who holds a Claim against any Debtor.

(36)     "**Cure Costs**" means all costs required of a Debtor to cure any and all defaults including pecuniary losses, pursuant to Bankruptcy Code § 365, of such Debtor arising under any executory contract to which such Debtor is a party, or any unexpired lease to which such Debtor is a party.

(37)     "**DIP Loan Agreement**" means that certain Debtor-in-Possession Loan Agreement dated September 23, 2009 (as amended, supplemented, or otherwise modified from time to time) among and between MPF Corp and MPF-01, as borrowers, the Joint Provisional Liquidators, and DvB as lender, together with all other documents attendant thereto or executed in connection therewith.

(38)    **"DIP Loan Claims"** means Claims of DvB as lender, security trustee, lead arranger, and/or facility agent, as the case may be, arising under the DIP Loan Agreement and the DIP Financing Orders, which, for the avoidance of doubt, shall include, but not be limited to, such Claims arising from or related to loans advanced by DvB to one or more of the Debtors after the Petition Date under Tranche B1B and Tranche B2B of the First Lien Credit Agreement and approved by the DIP Financing Orders.

(39)    **"DIP Financing Orders"** means, collectively, the Interim Order Approving Postpetition Secured Financing Pursuant to Bankruptcy Code § 364, dated February 3, 2009 (Dkt. No. 164); the Amended Interim Order Approving Postpetition Secured Financing Pursuant to Bankruptcy Code § 364, dated February 6, 2009 (Dkt. No. 168); the Final Order Approving Postpetition Secured Financing Pursuant to Bankruptcy Code § 364, dated March 20, 2009 (Dkt. No. 205); the Interim Order Approving Postpetition Secured Financing Pursuant to Bankruptcy Code § 364, dated September 9, 2009 (Dkt. No. 275); the Final Order Approving Postpetition Secured Financing Pursuant to Bankruptcy Code § 364, dated September 23, 2009 (Dkt. No. 292); the Order Granting Emergency Motion for Entry of an Order Approving Amendment to Debtor in Possession Financing Documents and Modification of Final Order Approving Postpetition Secured Financing Pursuant to Bankruptcy Code § 364, dated January 7, 2010 (Dkt. No. 323); and the Order Approving (I) Amendment to Debtor in Possession Financing Documents; (II) Modification of Final Order Approving Postpetition Secured Financing Pursuant to Bankruptcy Code § 364; and (III) Entry into Amended DIP Debenture, dated April 14, 2010 (Dkt. No. 349).

(40)    **"Disclosure Statement"** means the Amended Disclosure Statement for the Debtors' Amended Joint Plan of Reorganization dated as of May 12, 2010, as the same may be amended, modified or supplemented from time to time, including all exhibits and schedules thereto, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and which shall be in form and substance acceptable to DvB.

(41)    **"Disputed"** means, in reference to a Claim or Interest, any Claim or Interest not otherwise Allowed or paid pursuant to the Plan or an order of the Bankruptcy Court (a) which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court; (b) proof of which was required to be filed but as to which a Proof of Claim or Interest was not timely or properly filed; (c) proof of which was timely and properly filed and which has been or hereafter is listed on the Schedules as unliquidated, disputed, or contingent; (d) that is disputed in accordance with the provisions of this Plan; or (e) as to which the Debtors or Liquidating MPF, as applicable, or DvB or the Litigation Trustee have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by the Debtors or Liquidating MPF, as applicable, or DvB or the Litigation Trustee in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; provided, however, that for purposes of determining whether a particular Claim is a Disputed Claim prior to the expiration of any period of limitation fixed for the interposition by the Debtors or DvB or the Litigation Trustee of objections to the allowance of Claims, any Claim that is not an Allowed Claim shall be deemed Disputed.

(42)    "**DvB**" shall mean DvB Group Merchant Bank (Asia) Ltd. in its capacity as lender, security trustee, lead arranger and/or facility agent, on behalf of the other Lenders, (as context may require) under the First Lien Credit Agreement, the DIP Loan Agreement, and the DIP Orders.

(43)    "**DvB Guarantee**" means the on-demand bank guarantee issued by DvB dated June 5, 2009 in the amount of up to 9,547,542 Euros (which amount has been reduced to 9,307,906 Euros because of drawings thereunder) in favor of Wärtsilä Norway AS to secure the payment obligations of MPF under that certain contract for the provision of a power, propulsion and automation package dated August 23, 2006 by and between MPF and Wärtsilä Norway AS, as amended or supplemented from time to time.

(44)    "**DvB Secured Claim**" shall mean any and all Claims of DvB as Lender arising under and relating to the advances made to MPF and MPF-01 pursuant to Tranche B2 of the First Lien Credit Agreement and which, for the avoidance of doubt, shall not include (i) Claims included as part of the DIP Loan Claims or (ii) the Prepetition Tranche B1B and B1A Claims, which shall be classified, for the purposes of distributions and treatment under the Plan, as General Unsecured Claims.

(45)    "**Effective Date**" means the Business Day on which all conditions set forth in Section 8.02 of the Plan have been satisfied or waived as permitted hereunder.

(46)    "**Emtunga Contract**" means that certain Contract for Living Quarters, Life Boats and Helideck dated November 1, 2006 between MPF and Pharmadule Emtunga AB.

(47)    "**Entity**" has the meaning set forth in Bankruptcy Code § 101(15).

(48)    "**Estate(s)**" means individually or collectively the estate created for such Debtor in its Chapter 11 Case pursuant to Bankruptcy Code § 541.

(49)    "**Final Order**" means (i) an Order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or motion for re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings or motion for re-argument or rehearing shall then be pending or (ii) if an appeal, writ of certiorari, motion for re-argument or rehearing thereof has been filed or sought, such order of the Bankruptcy Court shall not have been stayed.

(50)    "**First Lien Credit Agreement**" means the Facility Agreement dated as of November 21, 2007 (as amended, supplemented, or otherwise modified from time to time) among MPF and MPF-01, the financial institutions party thereto, and DvB as lead arranger and facility agent, together with all other documents attendant thereto or executed in connection therewith.

(51)    "**General Unsecured Claim**" means any Claim that is not an Administrative Claim or is not Secured or entitled to priority under the Bankruptcy Code.

(52)    "**Holder**" means the beneficial holder of any Claim or Interest.

(53)     "**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Bankruptcy Code § 1124.

(54)     "**Interests**" or "**Interest**" means the interest of any holder of equity securities in any of the Debtors.

(55)     "**Joint Provisional Liquidators**" means Charles Thresh of KPMG Advisory Limited, Michael Morrison of KPMG Advisory Limited, and Mike Pink of KPMG LLP (UK), as joint provisional liquidators of MPF Corp and MPF-01 as appointed by the Supreme Court of Bermuda on September 24, 2008.

(56)     "**Lenders**" mean the financial institutions or other Persons from time to time that are, or have been, party to the First Lien Credit Agreement.

(57)     "**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

(58)     "**Liquidating MPF**" means each of, and collectively, MPF, MPF US and MPF-01 subsequent to Consummation.

(59)     "**Liquidation Account**" means that certain bank account with account name of MPF Corp Ltd (in provisional liquidation) in The Bank of Bermuda Limited in Hamilton, Bermuda, which has been the operating account of the Debtors during the pendency of these Chapter 11 Cases.

(60)     "**Litigation Trust**" shall mean the entity created pursuant to Section 4.07 of the Plan.

(61)     "**Litigation Trust Amount**" means Cash in the amount of $50,000.00 to be transferred from the Liquidation Account to the Litigation Trust as provided in Sections 4.02 and 4.07(d) of the Plan.

(62)     "**Litigation Trustee**" shall mean that Person or Entity selected by the Committee and named in the Confirmation Order and appointed in accordance with the Plan to oversee and administer the Litigation Trust.

(63)     "**MPF-01**" means MPF-01 Ltd., the Debtor in Case No. 08-36094, pending in the Bankruptcy Court.

(64)     "**MPF**" means MPF Corp. Ltd., the Debtor in Case No. 08-36086, pending in the Bankruptcy Court.

(65)     "**MPF US**" means MPF Holdings US LLC, the Debtor in Case No. 08-36084, pending in the Bankruptcy Court.

(66)     "**Novation Agreement**" means any one of the agreements between the Debtors, the Purchaser, a Vendor, and/or DvB, as applicable, pursuant to which the Debtors will assign their rights under the applicable Vendor Contract to the Purchaser, which Novation Agreement

shall include, among other things, the agreed upon Cure Cost with respect to such applicable Vendor Contract.

(67) **"Oceania Contract"** means the License Agreement dated April 12, 2006 between Oceania AS, Wilhelm Pihl Blystad and MPF Corp. Ltd. (as amended, supplemented or novated).

(68) **"Other Assets**" means any assets, other than corporate records, of any of the Debtors other than (i) the Debtors' Cash or Cash held in the Liquidation Account or by or on behalf of the Debtors, (ii) the Acquired Assets, and (iii) assets transferred to the Litigation Trust pursuant to the terms of this Plan.

(69) **"Permitted Encumbrances"** shall have the meaning given to it in the Assingment and Purchase Agreement.

(70) **"Person**" means an individual, corporation, general or limited partnership, limited liability company, trust, liquidating trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agency or political subdivision thereof) or other entity of any kind.

(71) **"Petition Date**" means the date or dates on which each of the respective Debtors filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

(72) **"Plan Distribution**" means the payment or distribution under the Plan of Cash, assets, securities or instruments evidencing an obligation under the Plan or other property of any nature to any Holder of an Allowed Claim.

(73) **"Plan**" means this Amended Joint Plan of Reorganization, including any Exhibits and all supplements, appendices and schedules thereto, either in its present form or as the same may be altered, amended, modified or supplemented from time to time as permitted herein and in accordance with the provisions of the Bankruptcy Code and the terms hereof.

(74) **"Prepetition Tranche B1B and B1A Claims"** means any and all Claims against MPF and MPF-01 arising under and relating to advances made to MPF and MPF-01 prior to the Petition Date under Tranche B1B and Tranche B1A of the First Lien Credit Agreement.

(75) **"Priority Non-Tax Claims**" means any Claim other than an Administrative Claim or a Priority Tax Claim, entitled to priority in payment as specified in Bankruptcy Code § 507(a).

(76) **"Priority Tax Claim**" means a Claim that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

(77) **"Pro Rata**" means that proportion that a Claim in a particular Class bears to the aggregate amount of all Claims in such Class.

(78) **"Professional**" means any professional (a) employed in the Chapter 11 Cases pursuant to Bankruptcy Code §§ 327, 328 or 1103 and to be compensated for services rendered

pursuant to Bankruptcy Code §§ 327, 328, 329, 330 or 331, or (b) seeking compensation and reimbursement pursuant to Bankruptcy Code § 503(b)(4).

(79)     "**Professional Fee Claim**" means a Claim of a Professional for compensation or reimbursement of expenses relating to services after the Petition Date through the Effective Date.

(80)     "**Proof of Claim**" means a proof of claim filed by a Holder of a Claim by the Bar Date.

(81)     "**Purchaser**" means Cosco (Dalian) Shipyard Co. Ltd.

(82)     "**Related Persons**" means, with respect to any Person, such Person's predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former Affiliates and each of their respective current and former members, partners, equity-holders, officers, directors, employees, managers, shareholders, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals).

(83)     "**Released Parties**" means, collectively, each of the Debtors, Liquidating MPF, the Committee, DvB, the Lenders, the Purchaser, the Joint Provisional Liquidators, the Litigation Trustee and each of their respective Related Persons.

(84)     "**Schedules**" means the schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time as permitted hereunder in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

(85)     "**Secured**" means, when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code § 553, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code § 506(a); or (b) Allowed pursuant to the Plan as a Secured Claim.

(86)     "**Secured Vendor Claim**" means a secured claim held by a vendor under a vendor contract secured by a possessory lien held by such Vendor, provided that the collateral is in such Vendor's possession.

(87)     "**Transfer**" shall mean the sale of the Acquired Assets to the Purchaser pursuant to the Confirmation Order.

(88)     "**Unclaimed Funds**" means any remaining security, money, funds, portion, or other property of the Litigation Trust that was distributed by the Litigation Trustee that remains unclaimed after six months from the distribution date, regardless of whether the Holder of an

Allowed Class 4 Claim has failed and/or refused to cash a check representing their Pro Rata share of the distribution, the Holder of an Allowed Class 4 Claim cannot be located by the Litigation Trustee with reasonable diligence, or any other reason the Holder of an Allowed Class 4 Claim has failed to accept the security, money, funds, portion, or other property.

(89)     "**Unimpaired**" means a Claim or Interest that is not Impaired.

(90)     **"Vendor"** means the vendor under a Vendor Contract.

(91)     **"Vendor Contract"** means each contract and agreement described on <u>Schedule A</u> to the Assignment and Purchase Agreement (including all amendments, modifications, supplements, waivers, change orders, or other variations thereto) which will be assumed and assigned to the Purchaser in connection with the sale of the Acquired Assets.

(92)     "**Voting Deadline**" means the date by which a Creditor or Interest Holder must deliver a Ballot to accept or reject the Plan as set forth in the order of the Bankruptcy Court approving the instructions and procedures relating to the solicitation of votes with respect to the Plan.

(93)     **"Wind-down Account"** shall have the meaning given to it in Section 4.02 of this Plan.

(94)     **"Wind-down Costs"** shall mean any expenses that will be required to take such steps necessary for the release of the Joint Provisional Liquidators (or Liquidators, to the extent such may be appointed by the Supreme Court of Bermuda) as provisional liquidators or liquidators (including, without limitation, to fund an application to the Supreme Court of Bermuda for that purpose).

**Section 1.03   Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE II**
**UNCLASSIFIED CLAIMS**
**(NOT ENTITLED TO VOTE ON THE PLAN)**

In accordance with Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III hereof.  These unclassified Claims are treated as follows:

**Section 2.01   Administrative Claims**

Except as otherwise provided for in the Plan, and subject to the requirements of Section 12.01 of the Plan, each Holder of an Allowed Administrative Claim shall, in full satisfaction, release, settlement, and discharge of such Allowed Administrative Claim: to the extent such claim is due and owing on the Effective Date, be paid in full, in Cash, on the Effective Date or as soon as is reasonably practicable thereafter; (b) to the extent such claim is

not due and owing on the Effective Date, be paid in full, in Cash, (i) as soon as is reasonably practicable after such claim becomes due and payable under applicable non-bankruptcy law or (ii) in the ordinary course of business; or (c) receive such other treatment as to which such Holder may agree with Liquidating MPF.  Cash payments of Allowed Administrative Claims shall be paid from the Liquidation Account.

### Section 2.02   Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim shall, in full satisfaction, release, and discharge thereof, receive (i) such treatment as to which such Holder may agree with Liquidating MPF or (ii) payment in full of such Allowed Priority Tax Claim on the Effective Date or as soon as is reasonably practicable thereafter.  Cash payments of Allowed Priority Tax Claims shall be paid from the Liquidation Account.

### Section 2.03   DIP Loan Claims

The DIP Loan Claims, whether arising under the First Lien Credit Agreement or the DIP Loan Agreement, shall, in full satisfaction, release, settlement, and discharge of such DIP Loan Claims, be paid in full, in Cash, on the Effective Date by the payment to DvB by the Purchaser of such portion of the Cash Proceeds necessary to pay the aggregate amount of the DIP Loan Claims.

### ARTICLE III
### CLASSIFICATION AND TREATMENT
### OF CLAIMS AND INTERESTS

### Section 3.01   Introduction

The categories of Claims and Interests set forth below classify Claims and Interests for all purposes, including for purposes of voting, confirmation, and distribution pursuant to this Plan and Bankruptcy Code §§ 1122 and 1123(a)(1).  A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  Notwithstanding anything to the contrary in this Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

All Claims (except for Administrative Claims and Priority Tax Claims, which are not classified pursuant to Bankruptcy Code § 1123(a)(1)) are classified in Section 3.03 below.

### Section 3.02   Voting; Presumptions

*(a)     Acceptance by Impaired Classes*

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan.  An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder

designated under Bankruptcy Code § 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders (other than any Holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  An Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

(b)     *Voting Presumptions*

Claims and Interests in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code § 1126(f) and, therefore, are not entitled to vote to accept or reject the Plan.  Claims and Interests in Classes that do not entitle the Holders thereof to receive or retain any property under the Plan are conclusively deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g) and, therefore, are not entitled to vote to accept or reject the Plan.

**Section 3.03   Claims Against the Debtors**

(a)     *Class 1: Priority Non-Tax Claims*

<u>Classification</u>: Class 1 consists of the Allowed Priority Non-Tax Claims against the Debtors.

<u>Treatment</u>: Except to the extent that a Holder of an Allowed Claim in Class 1 has agreed in writing with the Debtors to a different treatment (in which event such other writing will govern), each Holder of an Allowed Claim in Class 1 shall receive, on account of, and in full and complete settlement and release of and in exchange for, such Claim, at the election of the Debtors, (i) Cash equal to the amount of such Allowed Claim in Class 1 in accordance with Bankruptcy Code § 1129(a)(9), on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date such Claim in Class 1 becomes an Allowed Claim in Class 1 (or as soon as reasonably practicable thereafter), or (ii) such other treatment agreed to by the Debtors required to render such Allowed Claim in Class 1 Unimpaired pursuant to Bankruptcy Code § 1124.  Cash payments of Allowed Claims in Class 1 shall be paid from the Liquidation Account.

<u>Voting</u>: Claims in Class 1 are Unimpaired.  Each Holder of an Allowed Claim in Class 1 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code § 1126(f), and, therefore, shall not be entitled to vote to accept or reject the Plan.

(b)     *Class 2: DvB Secured Claim*

<u>Classification</u>: Class 2 consists of the DvB Secured Claim against the Debtors.

<u>Allowance</u>: The DvB Secured Claim against the Debtors is hereby Allowed as a Secured Claim in Class 2 in the amount of $85,338,009.00.

<u>Treatment</u>: In full and complete settlement and release of and in exchange for such Allowed Class 2 Claim, on the Effective Date and as part of the Closing, DvB shall receive (i)

from the Purchaser on behalf of MPF and MPF-01, the Cash Proceeds after payment in full of the DIP Loan Claims, (ii) and any funds remaining in (a) the Liquidation Account after payment of the Litigation Trust Amount and all Allowed Administrative Claims (including any Wind-down Costs), Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims and (b) the Wind-down Account after payment of all Wind-down Costs, and (iii) any additional Cash Proceeds that may be payable after the Closing Date as a result of any purchase price adjustment pursuant to the terms of the Assignment and Purchase Agreement.

To the extent that the amounts received as provided herein are less than the amount of the DvB Secured Claim, DvB waives the deficiency, and shall not become a Holder of a Class 4 General Unsecured Claim against the Debtors with respect to such deficiency.

Voting: Claims in Class 2 are Impaired.  DvB, as the sole Holder of an Allowed Claim in Class 2, shall be entitled to vote to accept or reject the Plan.

(c)      <em>Class 3: Secured Vendor Claims</em>

Classification: Class 3 consists of the Secured Vendor Claims against the Debtors.

Treatment: On the Effective Date each Holder of an Allowed Class 3 Claim, if any, shall receive, on account of, and in full and complete settlement and release of and in exchange for such Allowed Class 3 Claim, distribution of the property securing such claim free and clear of all other liens, claims, and encumbrances; *provided, however,* that if a Vendor is a party to a Novation Agreement or possesses collateral that is part of the assets to be transferred to the Purchaser under the terms of the Assignment and Purchase Agreement, such Holder of an Allowed Class 3 Claim shall receive the treatment as set forth in, and under the terms of, the Assignment and Purchase Agreement and/or the relevant Novation Agreement.  For the avoidance of doubt, no treatment of such claims shall violate the Assignment and Purchase Agreement.

Voting: Class 3 Claims are Impaired.  Each Holder of an Allowed Claim in Class 3 shall be shall be entitled to vote to accept or reject the Plan.

(d)      <em>Class 4: General Unsecured Claims</em>

Classification: Class 4 consists of all General Unsecured Claims against the Debtors, the 2006 Bond Debt Claims, the 2008 Bond Debt Claims, and the Prepetition Tranche B1B and B1A Claims.

Treatment: Each Holder of an Allowed Class 4 Claim shall receive from the Litigation Trust at such times as are determined in the sole discretion of the Litigation Trustee their Pro Rata share of any amounts constituting proceeds from the resolution of Causes of Action.

Voting: Class 4 Claims are Impaired.  Each Holder of an Allowed Claim in Class 4 shall be entitled to vote to accept or reject the Plan.

*(e)     Class 5: Interests*

Classification: Class 5 shall consist of the Interests in the Debtors.

Treatment: On the Effective Date, all of the Class 5 Interests outstanding as of the Effective Date shall be extinguished, cancelled and discharged as of the Effective Date. Pursuant to Bankruptcy Code § 1129(b)(2)(C), Holders of Class 5 Interests shall not be entitled to, nor shall they receive, any distribution or retain any property or interest in property on account of such Class 5 Interest.

Voting: Class 5 Interests are Impaired. The Holders of Allowed Interests in Class 5 are deemed to have rejected the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

**Section 4.01   Sale of the Acquired Assets**

The Debtors will seek authority, in connection with Confirmation of the Plan, to sell the Acquired Assets to the Purchaser, pursuant to the terms of the Assignment and Purchase Agreement, attached hereto as **Exhibit "A,"** and the relevant Novation Agreements, each of which are attached hereto as **Exhibit "B,"** in globo, and/or the Confirmation Order with respect to executory contracts that may be assumed and assigned in the absence of a Novation Agreement. The Confirmation Order shall contain specific authority for the Debtors to comply with the terms and conditions of the Assignment and Purchase Agreement and all related documents and agreements.

The Assignment and Purchase Agreement provides for the assignment by MPF and MPF-01 of all of their right, title, and interest, in and to the Acquired Assets free and clear of all liens, claims, encumbrances, and interests, other than (a) Permitted Encumbrances and (b) any statutory lien or charge held by any Vendor relating to obligations of MPF or MPF-01 under a Vendor Contract, which liens and charges shall be released upon payment of the applicable Cure Amount. The Assignment and Purchase Agreement also provides that the Debtors will transfer to the Purchaser the Debtors' right, title, and interest in (i) certain designs, drawings reports and other records in the possession of the Debtors, and (ii) any equipment, material or facilities for which title or possession has been previously delivered to the Debtors or for the Debtors' benefit under a Vendor Contract in the possession of the original Vendor or any other Vendor. MPF will also either transfer its right to build one Multi Purpose Floater, to the extent vested in MPF pursuant to the terms of the Oceania Contract and/or applicable law, or abandon such right. In addition, MPF will either transfer its right, title, and interest in and to any equipment, material or facilities under the Emtunga Contract or abandon such right. Further, the Debtors and Cosco will enter into the Cosco Settlement Agreement prior to the Closing Date, pursuant to which, effective as of the Closing Date, (i) the Cosco Contract shall be terminated, (ii) MPF-01 and Purchaser shall release each other from any and all obligations and liabilities arising under, or relating to, the Cosco Contract, including, in the case of MPF-01, the obligation to pay the Cure Amount to Purchaser (as the vendor under the Cosco Contract), (iii) MPF-01 and Purchaser shall

release each other from their respective obligations and liabilities under the Cosco Contract and waive any and all claims or causes of action against each other and their respective related parties in connection with the Cosco Contract, and (iv) MPF and MPF-01 and their affiliates will release and permanently waive any and all claims that any of them had or may have against the issuers of any "refund guarantees" issued to or in favor of any of them at the request of Purchaser under, in connection with or relating to the Cosco Contract.

In addition to, and independent of, any other consideration to be provided under the Assignment and Purchase Agreement for the purchase and sale of the Acquired Assets, the Purchaser will (a) make a cash payment of $104,000,000 in United States of America Dollars to MPF and MPF-01 on the Closing Date, in full, without any deduction, withholding or set-off, and free of all bank charges, (b) assume the Assumed Liabilities in accordance with the Novation Agreements and/or the Confirmation Order, and (c) release MPF-01 from its obligation to pay the Cure Amount under the Cosco Contract.  In addition, under the terms of Section 2.6(c) of the Assignment and Purchase Agreement, the Purchaser may make an additional cash payment to MPF to the extent that the aggregate amount of the initial cash payment and any excess funds transferred to DvB pursuant to Section 4.02 of this Plan, is less than (ii) the aggregate amount of the DIP Loan Claims and the DvB Secured Claim; *provided, however,* that the aggregate amount of the initial cash payment and the additional cash payment shall not exceed $105,000,000 United States of America Dollars.

Pursuant to the terms of the Assignment and Purchase Agreement, the Purchaser will pay all Cure Amounts directly to the Vendors under the Vendor Contracts in accordance with the terms of (a) the relevant Novation Agreement with such Vendor, or (b) any Order of the Bankruptcy Court, including the Confirmation Order providing for the assumption and assignment of a Vendor Contract in accordance with Section 2.4 of the Assignment and Purchase Agreement.  The Cash Proceeds shall be paid by Purchaser, on behalf of the Debtors, to DvB, first, in full satisfaction of all DIP Loan Claims and, second, in satisfaction of the DvB Secured Claim.

Further, under the terms of the Novation Agreement with Wärtsilä Norway AS, Wärtsilä Norway AS will be permitted to call on the DvB Guarantee upon the completion of certain milestone work, and DvB will release the funds held in the cash collateral account supporting the DvB Guarantee to satisfy the payment of the Cure Amount and the completed milestone work. Upon receipt of such payment, Wärtsilä Norway AS agrees to release its rights and interests in and to the DvB Guarantee.

## Section 4.02   The Liquidation Account

All funds remaining in the Liquidation Account as of the Effective Date shall be deemed to be property of the estate and shall be used to pay (i) the Litigation Trust Amount, and (ii) the Allowed Administrative Claims (including any Wind-down Costs), Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.   To the extent that there are funds remaining after the payment of all Allowed Administrative Claims (including any Wind-down Costs), Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims, such excess funds shall be transferred to DvB as soon as is reasonably practicable.

The Joint Provisional Liquidators shall be permitted to establish a separate account Wind-down Account into which they are authorized to transfer, from the Liquidation Account, $300,000 to fund the Wind-down Costs.  To the extent that the Wind-down Account is created and funded as provided for herein and funds remain in the account after payment of all Wind-down Costs, such remaining funds shall be transferred to DvB as soon as is reasonably practicable.

## Section 4.03   The Litigation Trust and Litigation Trustee

On the Effective Date, a Litigation Trust is hereby created for the purpose of pursuing the Causes of Action for the benefit of holders of Allowed Class 4 Claims.  The Litigation Trust will not engage in the conduct of a trade or business.  The Plan shall serve as the trust instrument and no other trust instrument shall be prepared or entered into.  The Debtors and Liquidating MPF are and shall be treated as the Grantors of the Litigation Trust, and the Debtors and Liquidating MPF are owners of the res being transferred to the Litigation Trust.

All Causes of Action are reserved in Liquidating MPF and shall be transferred to the Litigation Trust as of the Effective Date, to be pursued by the Litigation Trustee, as a representative of the Estates under Bankruptcy Code § 1128(b)(3)(B) for the benefit of the Holders of Allowed Class 4 Claims.

The Litigation Trustee shall have the right to prosecute and enforce any rights to payment of claims or other rights and Causes of Action that the Debtors, Liquidating MPF, or the Estates may hold against any Person (except to the extent waived, settled, or released under this Plan or by prior order of the Bankruptcy Court).  The Litigation Trustee shall have the right to assert any Claims or Causes of Action that the Debtors, Liquidating MPF, or the Estates may hold against any Person asserting any Claim (other than a DvB Secured Claim, a DIP Loan Claim, an Allowed Administrative Expense Claim, an Allowed Priority Tax Claim, or an Allowed Priority Non-Tax Claim) against the Debtors, Liquidating MPF, or the Estates; *provided, however,* nothing herein shall restrict the right of the Joint Provisional Liquidators or any liquidator subsequently appointed in the Bermuda Proceedings from bringing any claim or cause of action belonging to such Joint Provisional Liquidator or liquidator, as the case may be, arising under Bermuda law as a result of the commencement of the Bermuda Proceedings.  In the event the Joint Provisional Liquidators bring such a cause of action, any net proceeds of such cause of action shall be transferred to the Litigation Trust.

Entry of the Confirmation Order shall constitute the official appointment of the Litigation Trustee.  The Committee shall select the Litigation Trustee on or before the Confirmation Hearing.  The Confirmation Order shall contain the name of such individual or entity selected to serve as Litigation Trustee.  The Litigation Trustee shall, for the Plan Trust, receive, administer, hold and distribute, in accordance with this Plan, (i) the Litigation Trust Amount, and (ii) all proceeds of the Causes of Action in accordance with the terms and provisions of this Plan.  All holders of Allowed Class 4 Claims shall be the beneficiaries of the Litigation Trust, but any professionals hired by the Litigation Trust shall report solely to the Litigation Trustee.  The Litigation Trustee, if required by applicable law, shall file federal income tax returns for the Plan Trust pursuant to the applicable provisions of the Internal Revenue Code.

On the Effective Date, (i) the Debtors and Liquidating MPF, or the Joint Provisional Liquidators, on behalf of Liquidating MPF, shall transfer $50,000.00 from the Liquidation Account, and (ii) the Debtors and Liquidating MPF shall transfer the Causes of Action, to the Litigation Trust for the benefit of the Holders of Allowed Class 4 Claims.

Any Unclaimed Funds will be redistributed by the Litigation Trustee Pro Rata to those Holders of Allowed Class 4 Claims who can be located by the Litigation Trustee with reasonable diligence and who execute all appropriate documents.

Upon the resolution of all Allowed Class 4 Claims, by payment in full, any remaining portion of the Litigation Trust Amount or the proceeds of the resolution of Causes of Action in the possession of the Litigation Trust shall be turned over to DvB.

The conveyance of the Causes of Action shall be accomplished pursuant to this Plan and the Confirmation Order and shall be completed and effective upon the occurrence of the Effective Date, without the need of further documentation or instruments of conveyance, other than the Plan and the Confirmation Order.

The Litigation Trust shall have full authority to compromise Claims or settle interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the generality of the foregoing, the Litigation Trust may, without application to or approval by the Bankruptcy Court, pay from the Litigation Trust professional fees and expenses incurred after the Effective Date to the extent that funds are available in the Litigation Trust for such payment.

The formal name of the Litigation Trust shall be the "MPF Litigation Trust."

**Section 4.04   Abandonment or Transfer of Other Assets**

All of the Other Assets shall be, at the sole discretion of DvB, transferred to DvB or abandoned pursuant to Bankruptcy Code § 554(a) as being of inconsequential value and of no benefit to the Debtors or the Creditors.

**Section 4.05   Authorization for Transactions**

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors and Liquidating MPF may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan or the Transfer, including: (a) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; and (c) all other actions that the Debtors or Liquidating MPF determine are necessary or appropriate.

**Section 4.06    Effectuating Documents; Winding-Up Transactions**

After the Effective Date, with respect to MPF Holding, the chairman of the board of directors, the chief executive officer, and chief financial officer of MPF, and with respect to the Bermuda Debtors, the chairman of the board of directors, the chief executive officer, and chief financial officer of MPF Corp or the Joint Provisional Liquidators (or, to the extent appointed in the Bermuda Proceedings for the purposes of winding-down the Bermuda Debtors, any liquidator or joint liquidators) shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the winding-up of MPF Holding and the Bermuda Debtors, as applicable.

**Section 4.07    Exemption from Certain Transfer Taxes**

Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, including any transfers of property of the Debtors effected pursuant to the Assignment and Purchase Agreement provided under the Plan, from the Debtors to the Purchaser, the Litigation Trust or any other Person or Entity pursuant to the Plan or the Assignment and Purchase Agreement, as applicable, may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**Section 4.08    Closing of the Debtors' Chapter 11 Cases.**

When all Disputed Claims or Interests filed against a Debtor have become Allowed Claims or Interests or have been disallowed by Final Order or otherwise pursuant to this Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Litigation Trustee shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.


# ARTICLE V
# PROVISIONS GOVERNING DISTRIBUTIONS

**Section 5.01    Timing and Delivery of Distributions**

Distributions from the Litigation Trust shall be governed by the terms of Section 4.03 of this Plan and the terms of the other sections of this Article V and other relevant provisions of the Plan.

**Section 5.02   Method of Cash Distributions**

Any Cash payment to be made pursuant to the Plan or by the Litigation Trustee may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Liquidating MPF or the Litigation Trustee, as applicable, except for Cash payments made to DvB pursuant to the terms of the Assignment and Purchase Agreement or to any Vendor pursuant to a Novation Agreement from the Purchaser, which shall be made by wire transfer or such other method as may be specified by DvB with respect to any payment to DvB or the applicable Novation Agreement with respect to payments to be made thereunder.

**Section 5.03   Compliance with Tax Requirements**

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Litigation Trustee shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number or other tax information required by law to avoid withholding has not been received by the Litigation Trustee within thirty (30) days from the date of such request, the Litigation Trustee may, at its option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

**Section 5.04   De Minimis Distributions**

No Cash payment of less than five ($5.00) dollars shall be made to the Holder of any Claim on account of its Allowed Claim.

**Section 5.05   Setoffs**

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including Bankruptcy Code § 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Debtor, Liquidating MPF, or the Litigation Trustee, as the case may be, may setoff against any Allowed Claim or Interest (other than the DvB Secured Claim) and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor, Litigation Trustee, or Liquidating MPF may have or had against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor, Litigation Trustee, or Liquidating MPF of any such Claims, rights, and Causes of Action that may exist against such Holder.  **In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or cause of action of the Debtors, Litigation Trustee, or Liquidating MPF, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting**

the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code § 553 or otherwise.

**ARTICLE VI**
**EXECUTORY CONTRACTS, UNEXPIRED LEASES,**
**AND OTHER AGREEMENTS**

**Section 6.01   Assumption/Rejection**

The Debtors will assume and assign to the Purchaser all executory contracts identified on **Schedule 1** to the Plan pursuant to each applicable Novation Agreement. The Debtors will also assume and assign to the Purchaser the executory contracts identified on Schedule 2 to the Plan after payment of the applicable Cure Amounts identified on **Schedule 2**; provided, however, that if the Debtors, the Purchaser and the applicable Vendor with respect to an executory contract identified on **Schedule 2** reaches agreement on the terms of a Novation Agreement prior to the Confirmation Hearing, such executory contract will be assumed and assigned pursuant to the terms of such Novation Agreement. The Debtors shall have the right, with the prior written consent of the Purchaser and DvB, to remove any executory contract from **Schedule 2** on or before the Confirmation Hearing.

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease: (a) is being assumed pursuant to the Plan or the Assignment and Purchase Agreement and the applicable Novation Agreement; (b) is identified on **Schedule 2** to the Plan or is the subject of a motion to assume filed on or before the Confirmation Date; or (c) has been previously rejected or assumed.

**Section 6.02   Cure Amounts**

The Cure Amount with respect to any executory contract to be assigned pursuant to the terms of the Assignment and Purchase Agreement and a Novation Agreement shall be the amount set forth in the applicable Novation Agreement and identified on Schedule 1 to this Plan. The Cure Amount with respect to any other executory contract identified by the Debtors on **Schedule 2** to this Plan shall be the amount identified on Schedule 2 as the applicable Cure Amount to the extent that such executory contract is assumed and assigned pursuant to this Plan, unless the parties to any agreement identified on Schedule 2 enter into a Novation Agreement prior to the Confirmation Hearing, in which case, the Cure Amount shall be the amount set forth in such Novation Agreement. Any party taking exception to the proposed Cure Amount or to the assumption or assignment of an executory contract identified on Schedule 2 shall file a detailed statement setting forth its reason and the Bankruptcy Court shall determine the proper Cure Amount and the assignability of such executory contract at the Confirmation Hearing.

**Section 6.03   Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases

pursuant to the Plan or otherwise must be filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection. Any Proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor or the Litigation Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims; provided however, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Secured Vendor Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS**

**Section 7.01   Objections to Claims**

> (a)   *Authority.*

> *(i) Administrative Claims, Priority Tax Claims, Priority Non-Tax Claim.* Liquidating MPF shall have the exclusive right to file objections to any Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim or Secured Vendor Claim and to withdraw any objections to such Claims that they file. The Debtors, and, after the Effective Date, Liquidating MPF, shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Claims (i) if they have the prior written consent of DvB, (ii) if they have given detailed written notice of the proposed settlement, compromise or litigation to DvB and DvB has not objected thereto within five (5) Business Days after receipt of such notice, or (iii) upon the Order of the Bankruptcy Court after DvB has had notice and an opportunity to object.

> (ii) *General Unsecured Claims*   The Litigation Trustee shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to General Unsecured Claims. From and after the Effective Date, the Litigation Trustee may settle or compromise any Disputed General Unsecured Claim without approval of the Bankruptcy Court. The Litigation Trustee also shall have the right to resolve any Disputed General Unsecured Claim outside the Bankruptcy Court under applicable governing law.

> (b)   *Objection Deadline*

> As soon as practicable, but no later than the Claims Objection Deadline, Liquidating MPF, with respect to any Administrative Claim, Priority Tax Claim, Non-Tax Priority Claim, or Secured Vendor Claim, and the Litigation Trustee, with respect to General Unsecured Claims, may file objections with the Bankruptcy Court and serve such objections on the Creditors

holding the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Liquidating MPF or the Litigation Trustee, as applicable, to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by Liquidating MPF or the Litigation Trustee, as the case may be, without notice or hearing.

## Section 7.02    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some severable portion thereof, has become an Allowed Claim.

## Section 7.03    Distributions After Allowance

(a) *Administrative Claims, Priority Tax Claims, and Non-Tax Priority Claims*. Liquidating MPF (or the Joint Provisional Liquidators, on behalf of Liquidating MPF) shall make payments and distributions from the Liquidation Account to each Holder of a Disputed Administrative Claim, Priority Tax Claim, or Non-Tax Priority Claim that has become an Allowed Claim as soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order or the Claim becomes an Allowed Claim.

(b) *General Unsecured Claims and the Litigation Trust*. The Litigation Trustee shall make payments and distributions from a distribution reserve formed as part of the LitigationTrust to each Holder of a Disputed General Unsecured Claim that has become an Allowed General Unsecured Claim as soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed General Unsecured Claim becomes a Final Order.  After a Disputed General Unsecured Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed General Unsecured Claim, if any, shall become property of the Litigation Trust for the benefit of other Allowed General Unsecured Claims of the Class for which the distribution reserve was created.

## Section 7.04    Reduction of Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors or otherwise prior to the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Within 30 days after the Effective Date, Liquidating MPF (or the Joint Provisional Liquidators on behalf of Liquidating MPF) will provide the Litigation Trustee with a list or lists of payments made from the Estates since the Petition Date. Nothing in the Plan shall preclude Liquidating MPF (or the Joint Provisional Liquidators) or the Litigation Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

**Section 7.05    Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Litigation Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Litigation Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes with respect to such distribution, withholding distributions pending receipt of information necessary to facilitate such distribution, or establishing any other mechanisms it believes are reasonable and appropriate.

**ARTICLE VIII**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

**Section 8.01    Conditions Precedent to Confirmation**

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived in accordance with Section 8.04 below:

(a)    The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtors, the Joint Provisional Liquidators, the Purchaser, and DvB, approving the adequacy of the Disclosure Statement, and such Order shall have become a Final Order.

(b)    The Confirmation Order approving and confirming the Plan, as such Plan may have been modified, amended or supplemented, shall (i) be in form and substance reasonably acceptable to the Debtors, the Joint Provisional Liquidators, the Purchaser, and DvB; and (ii) include a finding of fact that Liquidating MPF, and its respective present and former members, officers, directors, managers, employees, advisors, attorneys and agents, acted in good faith within the meaning of and with respect to all of the actions described in Bankruptcy Code § 1125(e) and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

(c)    Execution of the Assignment and Purchase Agreement by all parties thereto.

(d)    The Debtors shall have sufficient Cash on hand to fund the Liquidation Account, the amount of which shall be acceptable to, and agreed to by, DvB.

**Section 8.02    Conditions Precedent to Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 8.04 below:

(a)     The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors, the Joint Provisional Liquidators, the Purchaser, and DvB, and such Order shall have become a Final Order.

(b)     An order from the Supreme Court of Bermuda approving the transactions contemplated under this Plan and the Assignment and Purchase Agreement shall have been entered and shall have become a Final Order.

(c)     The Closing shall have occurred pursuant to the Assignment and Purchase Agreement.

(d)     In accordance with Section 2.03, the DIP Loan Claims shall have been paid in full in Cash from the Cash Proceeds.

(e)     In accordance with Section 3.03(b), the Holder of the DvB Secured Claim shall have received all remaining Cash Proceeds after payment in full of the DIP Loan Claims.

## Section 8.03   Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

## Section 8.04   Waiver of Conditions

Each of the conditions set forth in Section 8.01 or Section 8.02 hereof may be waived in whole or in part by the Debtors with the prior written consent of DvB and Purchaser (as applicable), which consent shall not be unreasonably withheld.  The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors or DvB regardless of the circumstances giving rise to the failure of such condition to be satisfied.

## Section 8.05   Revocation, Withdrawal, or Non-consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims) unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE IX
## AMENDMENTS AND MODIFICATIONS

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Date; provided, however, that where the Plan requires a document to be acceptable to, consented to, agreed to or otherwise satisfactory to DvB, the Purchaser, or a Vendor under a Novation Agreement, the Debtors may not modify such document without the written consent of DvB, the Purchaser, or such Vendor, as applicable.  After the Confirmation Date and prior to "substantial consummation" of the Plan, as provided in Section 8.03 of the Plan, the Debtors may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not (i) materially adversely affect the treatment of Holders of Claims or Interests under the Plan or (ii) modify any provision of the Assignment and Purchase Agreement or any of the Purchaser's rights thereunder without the Purchaser's consent; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE X
## RETENTION OF JURISDICTION

Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

A.     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

B.     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code §§ 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtors and the Litigation Trust shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

C.     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors are parties or with respect to which one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

D.     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

E.     Hear and determine any Avoidance Action brought by the Litigation Trust and all defenses, offsets, or counterclaims asserted thereto.

F.     Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

G.     Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

H.     Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

I.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of the Plan or the Confirmation Order;

J.     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

K.     Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Assignment and Purchase Agreement, or any other contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

L.     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases or pursuant to the Plan;

M.     Recover all assets of the Debtors, the Litigation Trust, and property of the Estates, wherever located;

N.     Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505, and 1146;

O.     Hear and determine all disputes involving the existence, nature, or scope of any releases granted in the Plan;

P.     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

Q.      Enter an order or final decree concluding or closing the Chapter 11 Cases; and

R.      Enforce all orders previously entered by the Bankruptcy Court.

# ARTICLE XI
# COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Code § 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

# ARTICLE XII
# MISCELLANEOUS PROVISIONS

## Section 12.01 Bar Dates for Certain Claims

(a)      *Administrative Claim Bar Dates*

The Confirmation Order will establish a Bar Date for filing of all Administrative Claims, including substantial contribution claims (but not including Professional Fee Claims, claims for the expenses of the members of the Committee, Claims for Wind-down Costs, and Administrative Claims in subsections (b), (c), or (d) below), which date will be thirty (30) days after the date of the entry of the Confirmation Order (the "**Administrative Claims Bar Date**").  Holders of asserted Administrative Claims, other than Professional Fee Claims, Claims for Wind-down Costs, Claims for U.S. Trustee fees under 28 U.S.C. § 1930, and administrative ordinary case liabilities described in section (b) below, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so.  A notice prepared by the Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date.  Liquidating MPF shall have forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

(b)      *Administrative Ordinary Course Liabilities*

Holders of Administrative Claims that are based on liabilities incurred and paid by any Debtor in the ordinary course of the applicable Debtor's business (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) on and after

the Petition Date shall not be required to file any request for payment of such Administrative Claims.

*(c)    Wind-down Costs*

Claims for Wind-down Costs shall be paid in the ordinary course as and when incurred. Holders of Claims for Wind-down Costs shall not be required to file with the Bankruptcy Court any request for payment of such Administrative Claims, unless such Claim is otherwise a Professional Fee Claim, to which the provisions of subsection (d) of this Section 12.01 shall apply.

*(d)    Professional Fee Claims*

All final requests for compensation or reimbursement of professional fees pursuant to Bankruptcy Code §§ 327, 328, 330, 331, 363, 503(b) or 1103 for services rendered to or on behalf of the applicable Debtors or the Committee (if one has been appointed) prior to the Effective Date (other than substantial contribution claims under Bankruptcy Code § 503(b)(4)) must be filed and served on Liquidating MPF, the Committee, the Litigation Trustee, and DvB and their counsel no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Debtors, the Committee, the Litigation Trustee, DvB and their counsel and the requesting Professional or other entity no later than forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

**Section 12.02 Payment of Statutory Fees**

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

**Section 12.03 Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 12.04 Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to in the Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**Section 12.05 Releases**

(a)    *Releases by Debtors and Estates*

**Except as otherwise expressly provided in the Plan, the Assignment and Purchase Agreement, the Novation Agreements, or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and Liquidating MPF on its own behalf and as representative of its respective Estate, and each of its respective Related Persons, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action (including any Avoidance Actions), any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, Liquidating MPF or their respective assets, property and Estates, the Chapter 11 Cases or the Plan, the Assignment and Purchase Agreement and all documents and agreements related thereto, the Disclosure Statement or the Transfer that may be asserted by or on behalf of any of the Debtors, Liquidating MPF or their respective Estates.**

(b)    *Releases by Holders of Claims and Interests*

**Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, cause of action or liability of any nature whatsoever, or any Interest, or other right of a Holder of an equity security or other ownership interest that is terminated, and each of its respective Related Persons, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally each and all of the Released Parties of and from any and all Claims, any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance**

taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, Liquidating MPF or their respective assets, property and Estates, the Chapter 11 Cases or the Plan, Assignment and Purchase Agreement or any document or agreement related thereo, the Disclosure Statement or the Transfer.

(c)    **Injunction Related to Releases**

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, (i) all Persons that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, causes of action or liability of any nature whatsoever, or any Interest or other right of a Holder of an equity security or other ownership interest, relating to any of the Debtors or Liquidating MPF or any of their respective assets, property and Estates, that is released pursuant to this Section 12.05 of the Plan, (ii) all other parties in interest, and (iii) each of the Related Persons of each of the foregoing entities, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and of all Interests or other rights of a Holder of an equity security or other ownership interest: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Person discharged under this Section 12.05; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

(d)    *No Waiver*

Notwithstanding anything to the contrary contained in this Section 12.05, the releases and injunctions set forth in this Section 12.05 shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of Liquidating MPF or the Litigation Trustee to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by Liquidating MPF or the Litigation Trustee pursuant to the Plan.

(e)    *Integral to Plan*

Each of the releases and injunctions provided in this Section 12.05 is an integral part of the Plan and is essential to its implementation.  Each of the Released Parties and any other Persons protected by the injunctions set forth in this Section 12.05 shall have the right to independently seek the enforcement of such injunctions.

**Section 12.06 Exculpation**

The Released Parties SHALL NOT BE LIABLE FOR ANY cause of action arising in connection with or out of the administration of the Chapter 11 Cases, the planning of the Chapter 11 Cases, the formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, pursuit of Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court.  All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against any protected Person as to which such Released Party has been exculpated from liability pursuant to the preceding sentence.

**Section 12.07 Permanent Injunction**

**Except as otherwise expressly provided in the Plan, the Assignment and Purchase Agreement, the Novation Agreements, or the Confirmation Order, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against any Released Party on account of any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind against any Released Party or against the property or interests in property of such Released Party on account of any such Claim or Interest; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from any Released Party or against the property or interests in property of any Released Party on account of any such Claim or Interest.  The foregoing injunction will extend to successors of any Released Party and their respective property and interests in the property.**

**Section 12.08 Satisfaction of Claims**

The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for and in complete satisfaction and release of all Claims and Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties, or interests in property.  Except as otherwise provided herein, on the Effective Date, all Claims against and Interests in the Debtors shall be satisfied and released in full.  None of the Debtors, Liquidating MPF or their Affiliates, shall be responsible for any pre-Effective Date obligations of the Debtors or Liquidating MPF, except those expressly assumed by the Debtors or Liquidating MPF, as applicable.  Except as otherwise provided herein, all Persons and Entities shall be precluded and forever barred from asserting against the Debtors and their Affiliates, their respective successors or assigns, or their Estates, assets, properties, or interests in property any event, occurrence, condition, thing, or other or further Claims or Causes of Action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

**Section 12.09 Disposition of Liabilities**

Except as otherwise specifically provided in the Plan or the Confirmation Order, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code §§ 502(g), 502(h), or 502(i), in each case whether or not: (a) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is filed or deemed filed pursuant to Bankruptcy Code § 501; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to Bankruptcy Code § 502; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Subject to the terms of the Plan and the Confirmation Order, any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed satisfied on the Effective Date.  Subject to the terms of the Plan, the Confirmation Order shall be a judicial determination of the release and satisfaction of all Claims and Interests subject to the Effective Date occurring.  Subject to the terms of the Plan, the Confirmation Order shall be a judicial determination of the release and satisfaction of all liabilities of the Debtors, their Estates, Liquidating MPF and all successors thereto.  Such release and satisfaction shall void any judgment against the Debtors, their Estates, Liquidating MPF or any successors thereto at any time obtained to the extent it relates to a Claim or Interest released or satisfied, and operates as an injunction against the prosecution of any action against Liquidating MPF or their respective property and assets to the extent it relates to a released or satisfied Claim or Interest.

**Section 12.10 Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in these Chapter 11 Cases.

**Section 12.11 Term of Injunctions or Stay**

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code §§ 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All

injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

**Section 12.12  Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.

**In addition, any Holder of a Lien, mortgage, deed of trust, pledge or other security interest released pursuant to the terms of this Plan shall execute such documents as reasonably requested by Liquidating MPF or DvB in form and substance as may be necessary or appropriate to evidence the release of any such mortgages, security interests or Liens of any nature.  If such Holder fails to execute such documents,  Liquidating MPF and/or DvB are authorized to execute such documents on behalf of such Holder and to cause the filing of such documents with any or all governmental or other entities as may be necessary or appropriate to effect such releases.**

**Section 12.13  Dissolution of Committee**

On the Effective Date, the Committee, if any, shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities, liabilities, and obligations related to and arising from and in connection with the Chapter 11 Cases.

**Section 12.14  No Admissions**

Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

**ARTICLE XIII**
**CONFIRMATION REQUEST**

The Debtors request Confirmation of the Plan under Bankruptcy Code § 1129.  If any Impaired Class does not accept the Plan pursuant to Bankruptcy Code § 1126, the Debtors request Confirmation pursuant to Bankruptcy Code § 1129(b).  In that event, the Debtors reserve the right to modify the Plan to the extent (if any) that Confirmation of the Plan under Bankruptcy Code § 1129(b) requires modification.

*[Signature Page Immediately Follows]*

Dated: May 12, 2010                    MPF HOLDINGS US LLC


                                       By: _____
                                       Name: _____Gerard Donald_____
                                       Title: _____Authorized Signatory____


Dated: May 12, 2010                    MPF CORP. LTD


                                       By: _____
                                       Name: _____Richard G. Petrie_____
                                       Title: _____CEO of MPF Corp. Ltd.___


Dated: May 12, 2010                    MPF-01 LTD.


                                       By: _____
                                       Name: _____Richard G. Petrie_____
                                       Title: _____Authorized Signatory____

                                       **DEBTORS AND DEBTORS IN
                                       POSSESSION**

Dated: May 12, 2010

MPF HOLDINGS US LLC

By:
Name:    Gerard Donald
Title:    Authorized Signatory

Dated: May 12, 2010

MPF CORP. LTD

By:
Name:    Richard G. Petrie
Title:    CEO of MPF Corp. Ltd.

Dated: May 12, 2010

MPF-01 LTD.

By:
Name:    Richard G. Petrie
Title:    Authorized Signatory

**DEBTORS AND DEBTORS IN POSSESSION**

*[Signature Page]*